*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re WALKER/BREWER, Minors.

UNPUBLISHED
January 26, 2023

No. 360410
Kent Circuit Court
Family Division
LC Nos. 18-052669-NA;
18-052670-NA;
18-052671-NA

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children SW, ZW, and JB pursuant to MCL 712A.19b(3)(c)(*i*) (conditions at adjudication continue to exist), (3)(g) (failure to provide proper care and custody), and (3)(j) (likelihood of harm if returned to parent). On appeal, respondent asserts that the trial court erred by finding that statutory grounds existed to terminate his parental rights and that termination was in the children's best interests. However, for the reasons explained in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In April 2018, the trial court ordered that the children be removed from the care of their mother[1] after the children witnessed a significant domestic violence incident between their mother and her boyfriend. This was the third time that the children had been removed from their mother on the basis of similar allegations. The children were then placed in respondent's care and released from the court's jurisdiction. A custody order was issued that granted respondent full custody of the children and stated that parenting time with the mother be supervised until further order of the court.

---

[1] The mother voluntarily released her parental rights to the children, and she is not a party to this appeal.

However, in December 2018, the trial court entered an order removing the children from respondent's care on the basis of allegations that respondent was homeless; that he dropped the children off with family members, including their mother and his grandmother, without providing financial assistance or power of attorney; and that he was unreachable by staff at a mental-health facility while SW was hospitalized for suicidal ideation. Respondent entered admissions to the allegations and participated in services for about three years. In November 2021, the Department of Health and Human Services (DHHS) sought the termination of respondent's parental rights. Following a hearing, which occurred over the course of three days, the trial court entered an order terminating respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

## A. STATUTORY GROUNDS

First, respondent asserts that the trial court erred by finding that statutory grounds for termination had been established by clear and convincing evidence. We disagree.

This Court reviews the trial court's decision concerning statutory grounds for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Moreover, "[a]ppellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. In this case, the trial court terminated respondent's parental rights on the basis of MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j). In pertinent part, those provisions provide the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In this case, the children were removed from respondent on the basis of allegations that he did not have suitable housing, he left the children with family members without providing financial assistance or power of attorney, and staff at a mental-health facility were unable to reach him to obtain his consent to treat SW with medication during her hospitalization. The dispositional order was entered on December 17, 2018. The termination hearing began on January 18, 2022, and concluded on January 27, 2022. As a result, more than 182 days have elapsed since the issuance of the dispositional order. See MCL 712A.19b(3)(c)(*i*).

There is no dispute that respondent consistently maintained adequate employment throughout the case. Additionally, respondent obtained an apartment for the children. However, the agency was concerned that respondent was not honest about his living situation. The children reported that two other women and two children lived in the apartment. The children were required to sleep on mattresses in the living room. There was also testimony that the children were directed to lie about respondent's girlfriend living in the apartment, while respondent consistently denied having contact with her. During an unannounced visit, the caseworker observed women's clothing and hygiene products. Respondent's aunt and mother were present, and the caseworker was unable to access respondent's bedroom. Given the children's reports and the caseworker's observations, it was unclear whether respondent's apartment was suitable for the children, as they had to sleep on mattresses in the living room, and there were already five people living in the apartment. Moreover, the caseworker could not determine whether all of the apartment's residents were appropriate to be around the children because respondent insisted that he lived alone.

Also, there were several occasions when agency staff were unable to reach respondent while SW was hospitalized during the case. Respondent failed to recognize his role in the children's removal and their trauma. He constantly blamed the children's mother and foster care for the children's mental-health issues. However, the children were removed from their mother's care twice before this case, and respondent declined to participate in those cases. Further, he left the children in the care of their mother for a month at a time in which she was not even supposed to have unsupervised visits. Respondent additionally left the children in the care of family members who later reported that they were unable to properly care for the mental-health needs of the children. Significantly, in October 2021, respondent brought up an incident of physical abuse during a family-therapy session with SW. SW was surprised and upset by this topic. She was subsequently hospitalized for suicidal ideations, and her therapist opined that the family session was the primary cause of this hospitalization. Respondent did not have a concrete plan for the children's mental-health treatment, such as counseling, in the event that the children were returned to his care. He also did not know SW's mental-health diagnosis or any of the medications she took. Ultimately, even after participating in services for over three years, respondent failed to demonstrate an understanding of the children's mental-health needs.

Finally, as observed by the trial court, respondent failed to complete his entire case-service plan. He obtained a counselor, but with so many changes and delays, he failed to show any benefit from counseling. Additionally, respondent was invited to attend the Enhanced Foster Care (EFC)

-3-

team meetings, but he failed to do so even after the case manager attempted to accommodate his schedule.

At the time of the termination hearing, SW was 16 years old, ZW was 14 years old, and JB was 10 years old. They had been in their present foster care for more than three years, and this was their third time in the foster system. None of the service providers believed that the children could be immediately returned to respondent's care. In the caseworker's opinion, if respondent engaged in services and was honest about his living situation, he would have to show six months of stability before the agency would consider returning the children.

Accordingly, given respondent's failure to obtain appropriate housing and lack of understanding of the children's trauma, their mental-health needs, and the age of the children, the trial court did not clearly err by finding that MCL 712A.19b(3)(c)(*i*) had been established by clear and convincing evidence. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (concluding that the trial court did not clearly err by finding insufficient compliance with, and benefit from, the services provided necessitated the termination of the respondents' parental rights).[2]

## B. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination was in the children's best interests. We disagree.

This Court reviews the trial court's determination that termination was in the children's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). The trial court must find that termination of parental rights is in the child's best interests by a preponderance of the evidence. *Id*. "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id*. (quotation marks and citation omitted). While determining the child's best interests, the trial court may consider a variety of factors, including the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *Id*. at 276-277 (quotation marks and citation omitted). "The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence." *Id*. at 277. "It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *Id*.

In this case, the trial court determined that the children did not have a bond with respondent because of his absence from most of their lives. While the trial court acknowledged that the

---

[2] Having so concluded, we need not address the remaining statutory grounds for termination identified by the trial court. See *In re VanDalen*, 293 Mich App at 139.

children expressed their preference to live with respondent, it believed that such preference might be out of fear or loyalty. Further, the trial court believed that the children needed stability. Their foster-care situation provided the children with the most stability they had known in the past several years, if not their entire lives. The trial court noted that the case went back several years, but during that time respondent failed to demonstrate that he could provide the children with an appropriate home. The trial court also found that respondent failed to show that he could properly parent all three of the children.

The trial court's finding was not clearly erroneous. While the caseworker testified that she believed that the children were bonded to respondent and there were times during the case in which the children stated their desire to live with respondent, the children were traumatized and had significant mental health needs. They were placed together in a preadoptive home that offered stability and compliance with mental-health treatment. The caseworker testified that the children needed permanency, stability, and finality. This case had been open since 2018; however, the children had been involved with the foster-care system since 2011. After participating in services for over three years, it was unknown when or if the children could be safely returned to respondent. As observed by the trial court, respondent failed to demonstrate that he had appropriate housing or that he understood how to manage the children's mental-health issues. Considering these factors, there was at least a preponderance of the evidence to establish that termination of respondent's parental rights was in the children's best interests.[3] See *id*.

### III. CONCLUSION

The trial court did not err by terminating respondent's parental rights. We affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford

---

[3] The trial court found that termination was in the children's best interests beyond a reasonable doubt. This higher standard is typically applicable in criminal cases. See *People v Beck*, 504 Mich 605, 626-627; 939 NW2d 213 (2019). Therefore, the conclusion that the evidence satisfied this higher standard clearly would satisfy the lower standard of preponderance of the evidence.